### HARBOUR *v.* ELDRED.

1. CERTIORARI—VOID JUDGMENT.
   *Certiorari* is the proper proceeding to get rid of a void judgment.

2. SAME—OBJECTIONS NOT RAISED BELOW.
   On *certiorari* to review a justice's judgment, errors alleged in the affidavit for the writ, going to the jurisdiction, may be considered, although the points made were not raised before the justice.

3. JUSTICES OF THE PEACE—JURISDICTION—ADJOURNMENT.
   Under 2 How. Stat. § 6903, providing that a justice of the peace may adjourn a cause, under certain circumstances, "at the time of the return" of process therein, an adjournment on the return day, without a return having been made, is unauthorized, and the subsequent proceedings are void.

Error to Iron; Stone, J.   Submitted October 23, 1895. Decided November 19, 1895.

Replevin by Ellen Harbour against William C. Eldred. From a judgment for defendant, plaintiff brings error. Affirmed.

*Julius J. Patek*, for appellant.

*Maurice D. L. Fuller*, for appellee.

HOOKER, J. Plaintiff brought replevin in justice's court, and the defendant removed the proceedings to the circuit by *certiorari*, where the judgment of the justice was reversed. The case comes to this court upon writ of error.

The errors alleged in the affidavit for *certiorari* are:

(1) An illegal adjournment on July 27th, the return day, the writ not having been returned.

(2) The erasure from the justice's docket on July 31st of entries dismissing the cause, making new entries, used in issuing a summons.

(3) In refusing evidence offered upon a motion to dismiss on the 11th day of August.

(4) In refusing to dismiss the action upon the evidence produced upon said motion.

(5) In issuing the *alias* writ or summons and proceeding with the cause after acknowledging that he had dismissed the proceeding.

(6) In not dismissing the proceeding on motions made August 11th and 13th.

(7) In entering judgment against the defendant.

The return shows that the writ was issued on July 20, 1894, returnable July 27th at 10 a. m.; that at that time the justice called the case, and the plaintiff appeared by her agent, who proved his authority under oath, and that the constable to whom the writ had been delivered was also present, and informed the justice that he had replevied the goods and chattels described in the writ, and delivered them to the plaintiff; that he had not summoned the defendant; and that he had attached his return in writing to the original writ, setting forth therein these facts, but that the writ and his return were locked up in a safe to which he had not access. The justice returned further that, being otherwise officially engaged, and defendant not being present, he held the matter open one hour, at the expiration of which time, the defendant not appearing, he held the case open until July 31st at 10 o'clock in the forenoon, and so informed plaintiff's agent; that at that time he called the case, and the plaintiff

was present by her agent, and the officer informed the
justice that he was ready to file the writ with his return,
but the justice requested him to wait until he had dis-
posed of some other matters then occupying his attention.
The defendant did not appear.  As soon as the justice
got through with the matter on hand he went to see Mr.
Patek, plaintiff's attorney, who was at home, sick, to
consult with him as to issuing new papers in said cause,
and he requested the justice to wait until afternoon, so
he could be present, as he thought that the justice could
not make out the papers correctly.  At 11 o'clock a. m.
of the same day the justice saw Patek across the street
from the office, in consultation with the plaintiff's agent;
and after 11 o'clock of said day he (the justice) made
docket entries of the case and dismissed said matter,
and made an entry of said dismissal upon the docket,
taxed his costs, and rendered judgment against the
plaintiff, and attached his signature to the docket as
justice of the peace.  About 2 p. m. the same day, the
officer brought to the office of the justice the original
writ and his return, and Mr. Patek appeared for the
plaintiff, with one Kellerschon, and insisted upon the
erasure of the entry upon the docket, and brought a copy
of docket entries for the justice to insert in place
of those then upon the docket, and said Kellerschon then
and there erased the entries upon the docket and made
others; and at their request the justice issued a summons
against the defendant, returnable August 11th at 10 a.
m., which was returned on or before the return day with
a return that the same had been served on July 31st upon
the defendant by delivering to him personally a true copy,
in said county.  At the hour mentioned the plaintiff
appeared and declared.  The defendant appeared specially
by attorney, and filed "a motion as a special plea,
or a plea to the jurisdiction," with affidavits in support
thereof.  Arguments were heard, and the case held open
by consent until August 13th at 10 o'clock a. m., without

prejudice to the jurisdiction. On August 13th the motion was overruled, and after holding the case open one hour for defendant to appear, and defendant not appearing, he proceeded with the trial of said cause, and rendered judgment against the defendant. The justice returned further that he directed Kellerschon, on July 31st, to enter on the docket the fact that the officer's return on the original writ was not brought to him until 2 p. m. of July 31st, and that he so entered it on the docket, and that afterwards Mr. Patek procured the erasure thereof "at 2 o'clock p. m.," and had inserted "10 a. m.," and that 2 p. m. was correct.

He returns further, in answer to the errors specifically alleged:

(1) That he held the case open from July 27th to July 31st on account of Mr. Patek's absence, and the officer not having returned the writ.

(2) That he dismissed the action July 31st, and made the entries aforesaid in his docket, but permitted the erasure and new entries at Mr. Patek's request.

(3) That he overruled the motion to dismiss for the reason that he did not consider the evidence adduced by defendant to be proper, and supposed the erasure of the docket was correct and legal.

(4) That this return is true and correct, and is made in place of a pretended return made and drawn by Mr. Patek, previously delivered by the justice to the clerk of the circuit court, and that he signed such return without reading in full.

Counsel for the plaintiff insists that the only question that can be reviewed is whether the justice erred in denying the motion to dismiss. He bases this upon the propositions: (1) That all other questions were abandoned at the hearing in the circuit court. (2) That the existing entries upon the docket cannot be contradicted by the justice's return.

In support of the first of these we are referred to the record (page 22), where we find that the only foundation for the statement is contained in the order of the circuit

judge granting a reargument after the judgment had
been reversed. The record hardly justifies that inference,
and the fact that the points raised by the errors alleged
in the affidavit for *certiorari* were not made before the
justice should not have precluded their consideration at
the circuit. "A party may remove a cause by *certiorari*,
although he did not appear before the justice. By neglect-
ing to appear he waives nothing." *Campau* v. *Fairbanks*,
1 Mich. 152. "*Certiorari* is the proper proceeding to get
rid of a void judgment." *Lake Shore, etc., R. Co.* v. *Hunt*,
39 Mich. 469.

A justice's powers are statutory, and his jurisdiction
must affirmatively appear. Without a valid service of
the writ or an appearance by defendant, he has no juris-
diction to proceed and render a judgment. *Vliet* v. *Westen-
haver*, 42 Mich. 593. And the only sufficient evidence of
such service is that pointed out by the statute. Mani-
festly a judgment based upon a return which does not
show a valid service would be void, and all proceedings
in a case where there has not been a valid service are
null. In the present case there was service of the writ
to the extent of taking the property and attempting to
find the defendant. Before the rendition of the second
judgment the return was made, but none was made on
the return day. Might the justice, upon his own motion
(defendant not appearing), adjourn the case for four days
to enable the plaintiff to obtain a return of the writ?
The power of the justice to make such adjournment is
statutory, and is confined to the time of the return of pro-
cess or of joining issue. 2 How. Stat. § 6903. The lan-
guage is not that he may adjourn on the day that the
writ is returnable, but "at the time of the return," and
he has no power to adjourn without the return of the
writ. Had the plaintiff or the justice failed to appear
within one hour after the time mentioned in the writ,
the proceeding would have abated, under ordinary cir-
cumstances. Had the defendant appeared and asked a
dismissal of the proceedings, it would have been granted.

There was no valid evidence that there had been a service, upon which jurisdiction depended. *Manning* v. *Johnson,* 7 Barb. 457; *Brown* v. *Cady,* 19 Wend. 477; *Stadler* v. *Moors,* 9 Mich. 268; *Hall* v. *Shank,* 57 Mich. 36. We think that there was no authority to proceed with the case without a return, or to adjourn the same, which the act of the justice amounted to, and that the subsequent proceedings were void.

The judgment should be affirmed.

The other Justices concurred.